IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AMY ARIAS and SAN JUAN ARIAS, as Next Friends of RJA, their minor child, Plaintiffs, vs. FCA US LLC, Defendant. | CIVIL ACTION NO. 4:18-cv-3526 |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

COME NOW, Amy Arias and San Juan Arias, as Next Friends of RJA, their minor child ("Plaintiffs"), complaining of FCA US LLC ("Defendant"), and for cause of action would respectfully show the following:

### I.
### PARTIES

1. Plaintiffs are residents of Wilson County, Texas.

2. Defendant FCA US LLC is a Delaware limited liability company doing business in Texas and may be served with summons through its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

### II.
### JURISDICTION AND VENUE

3. This is a product liability and negligence cause of action arising out of a vehicular accident that occurred in the Southern District of Texas.

4. The Defendant has its principal places of business in a state other than Texas. Jurisdiction, therefore, attaches pursuant to 28 U.S.C. § 1332 because there is diversity of parties, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

1

## III.
## FACTS AND GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

5. On or about April 26, 2013, Amy Lyn Arias was driving her 2012 Dodge Journey, VIN 3C4PDCBG9CT187020 ("the Journey"), near Schulenburg in Fayette County, Texas, with her daughter, RJA, and mother, Hope, as her passengers.

6. While pulling across the highway at the intersection of US-77 and IH-10 to enter a convenience store parking lot, an oncoming tractor trailer struck the Journey in the passenger side (the far side to both Amy and RJA).

7. Following the collision, Amy, who was uninjured, opened her door and got out.

8. RJA was unconscious despite the complete lack of damage to the area surrounding her.

9. An ambulance crew parked nearby heard the crash and responded in less than a minute.

10. The ambulance crew unbuckled and removed RJA from the Journey, immediately tending to her injuries.

11. Not long thereafter, responders extricated Hope from the wreckage.

12. Hope recovered from the injuries she suffered in the crash and has no residual physical problems.

13. The crash forces created in this collision were modest with respect to the Journey's driver side occupants.

14. During the incident, RJA was properly using a belt positioning booster seat, which was properly installed in the Journey.

15. The seat belt for RJA's seating position did not have a pretensioner.

16. The area occupied by RJA—who was seated on the far side of the impact—remained pristine following the crash, but RJA suffered a spinal cord injury that has left her with permanent ventilator-dependent quadriplegia.

17. During the crash, the driver—Amy—was protected by a pretensioner.

18. Remaining effectively coupled to her seat reduced the kinetic energy imparted to Amy's upper torso.

19. The pretensioning of Amy's shoulder belt prevented her from moving away from her restraint and from contacting anyone or anything in the Journey.

20. Had RJA been afforded the same opportunity for effective coupling and restraint in a crash, she would have been similarly protected.

21. Accordingly, deficiencies in the Journey caused RJA to suffer catastrophic injuries rather than minor injuries like Amy received.

22. The Journey was designed, manufactured, assembled, marketed and sold by FCA US LLC (or, more specifically, its predecessors including Chrysler Group LLC, hereafter referred to as "Chrysler").

23. Chrysler (under its current and previous names) has been designing, manufacturing, assembling, marketing and selling motor vehicle tires for many decades.

24. At the time of the Journey's design and manufacture, Chrysler knew that its occupants would include children seated in the rear/second row.

25. At the time of the Journey's design and manufacture, Chrysler knew that accidents—including side impacts—are going to happen in the vehicles it manufactures.

26. At the time of the Journey's design and manufacture, Chrysler knew about crashworthiness.

27. Crashworthiness is the science of minimizing the risk of serious injury and fatality in motor vehicle collisions through the use of safety systems.

28. Crashworthiness requires that an auto manufacturer design its vehicles in such a way that when a crash occurs, injuries to the people inside the vehicle are minimized to the extent

practical.

29. Because the Journey's rear seat belts are not suitable for young children like RJA and there are no integrated child seats, the vehicle was uncrashworthy.

30. When a vehicle is not crashworthy, it means that people suffer injuries that could have been prevented.

31. The Journey's rear seat belt failed to properly restrain and protect RJA in the collision and, as a direct and proximate result of defects in the seating and restraint systems of the vehicle as well as the negligent acts and omissions of Chrysler, RJA's body was allowed excessive and injurious movement, resulting in catastrophic spinal and head injuries that have rendered her quadriplegic.

32. Given the dangers to children that resulted from the design decisions and desire to cut costs by not including pretensioners in the rear seat restraints, Chrysler should have made it clear that a child safety seat was necessary and should have provided clear, unequivocal and proper warnings and instructions concerning the type of safety seat to be used and the manner in which the safety seat was to be used.

33. Chrysler failed to provide such information, warnings and instructions with the Journey.

34. As a direct and proximate result of the injuries RJA sustained, she has been damaged in the past and in the future.

**CAUSES OF ACTION**

IV.
**STRICT LIABILITY - FCA US LLC (CHRYSLER)**

Plaintiffs incorporate by this reference each and all of the allegations contained in Paragraphs 1 through 34 of this complaint as though fully set forth here.

35. Chrysler designed, manufactured, assembled, marketed and placed into the stream of

commerce the Journey.

36. Chrysler had a duty to use reasonable care in the manufacture, construction, design, formulation, preparation, processing, assembly, testing, evaluation, certification, warnings, instructions, marketing and selling of the Journey so as not to subject the user to unnecessary injury because of a defect.

37. The Journey was defective and unreasonably dangerous as designed, manufactured and marketed by Chrysler in that it offered insufficient occupant restraint and protection and was accompanied by insufficient warnings and notices about its defective nature.

38. There were safer alternative designs that would have prevented these defects and inadequacies and that would have either prevented or significantly reduced the risk of injury to RJA without substantially impairing the Journey's utility.

39. Protection of the Journey's far side occupants was dependent on the design, performance and effectiveness of its restraint system.

40. Before the crash, both RJA and Amy were coupled to their seats.

41. RJA was correctly restrained with the Journey's available seat belt and through use of a belt-positioning booster seat, and Amy was wearing her available seat belt.

42. In the context of a far side crash, there was a dangerous difference between the protection provided to Amy as the restrained driver of the Journey and that which was provided to RJA as the restrained second row child passenger in the Journey.

43. While Amy was afforded appropriate restraint, RJA was not.

44. Defects in the restraint system for the Journey's second row seat directly caused RJA's critical injuries.

45. Specifically, absence of a pretensioning seat belt retractor in the Journey's second row

outboard position is a design defect and a material omission of important safety technology that has been shown to reduce injuries and save lives.

46. Without such a design, RJA's available restraint failed to provide proper restraint in this crash because her body was allowed to reach outside of her booster seat towards the right rear door panel.

47. The seat belt for RJA's seat failed to hold the booster seat adequately, causing its yaw and roll.

48. The shoulder belt for RJA's seat failed to absorb her upper torso kinetic energy, causing and exacerbating her head and neck injuries.

49. Had RJA been provided a pretensioner, her catastrophic head and neck injuries would have been prevented.

50. In even a worst case scenario, RJA would only have suffered mild, soft-tissue injuries (*e.g.*, a sprain) had she been afforded this safer alternative.

51. The failure of Chrysler to provide this safer alterative design as standard equipment on the Journey for the second row outboard position's restraint system is unacceptable given that pretensioners were  technologically and economically feasible at the time the Journey was designed and manufactured.

52. The technological and economic feasibility of the pretensioner feature is clear: it was already included as standard equipment in this same Journey for the driver and front right passenger seats.

53. Incorporating this safer alternative in the rear seat would not affect the utility of the restraint system.

54. This safer alternative design was economically and technologically feasible at the time the

Journey left the control of Chrysler by the application of existing or reasonably achievable scientific knowledge.

55. Such defective and unreasonably dangerous design of the Journey was a producing cause of RJA's injuries and damages, rendering Chrysler strictly liable under Sections 402A and 402B of the Restatement of Torts (Second) and under applicable products liability law without regard to or proof of negligence or gross negligence, although Plaintiffs would also show that the Journey was negligently designed, manufactured, assembled, marketed and sold in a defective condition and that such negligence proximately caused RJA's injuries and damages.

56. Chrysler owed a duty to give full, fair and adequate warnings of the dangers inherent in the use of the Journey.

57. Since it is clearly foreseeable that a small child would be riding as a rear seat passenger in the Journey, Chrysler should have made it clear that the available restraints were not acceptable for children without a booster safety seat and, further, should have identified the type of booster safety seats that should be used, along with clear, unequivocal and proper warnings and instructions concerning the use of such booster safety seats.

58. Chrysler breached such duties, and its breach was a further producing and proximate cause of RJA's catastrophic head and neck injuries. While a rear seat belt pretensioner would not have prevented the crash, a rear seat belt pretensioner would have eliminated RJA's catastrophic head and neck injuries. Plaintiffs are only seeking damages for the catastrophic head and neck injuries that a rear seat belt pretensioner would have, in reasonable probability, prevented.

## V.
## NEGLIGENCE - FCA US LLC (CHRYSLER)

Plaintiffs incorporate by this reference each and all of the allegations contained in Paragraphs 1 through 58 of this complaint as though fully set forth here.

59. RJA's catastrophic head and neck injuries were proximately caused by the negligence of Chrysler in designing, manufacturing, assembling, testing and selling the Journey with insufficient occupant restraint and protection for rear seat child passengers.

60. Chrysler was negligent in failing to include appropriately designed pretensioners and/or integrated child seats in the Journey.

61. Chrysler was negligent in failing to provide reasonable and adequate warnings to the users of the Journey about the vehicle's lack of restraint and protection for rear seat child passengers.

62. Chrysler was negligent in marketing the vehicle in such a way as to mislead consumers as to its safety and crashworthiness with respect to rear seat child passengers.

63. Chrysler was negligent by failing to properly and adequately test the Journey to analyze its ability to protect rear seat child occupants in crashes, including lateral crashes.

64. Chrysler knew, or in the exercise of ordinary care should have known, of the defective condition of the Journey occupied by RJA and of the likelihood that its operation could cause injury to those children who might be rear seat passengers in it, but despite such knowledge, Chrysler permitted the Journey with its rear seating and restraint systems to be assembled, marketed, distributed and sold.

65. The negligence of Chrysler was a proximate and producing cause of Plaintiffs' injuries and damages complained of herein.

## VI.
## BREACH OF EXPRESS AND IMPLIED WARRANTY - FCA US LLC (CHRYSLER)

Plaintiffs incorporate by this reference each and all of the allegations contained in Paragraphs 1 through 65 of this complaint as though fully set forth here.

66. Defendant Chrysler, by and through the sale of the Journey, expressly and impliedly warranted to the public generally, and to Plaintiffs specifically, that the vehicle was fit for the purpose for which it was intended.

67. Plaintiffs made use of the product as alleged herein, and relied on the express and implied warranties.

68. Contrary thereto, the Journey was not fit for its intended use, rendering the product unreasonably dangerous.

69. The vehicle was sold in violation of the implied warranty of merchantability as it relates to the rear seat restraints which were not fit for the purpose of providing adequate and proper restraint to rear seat occupants in far side impact collisions.

70. Defendant Chrysler breached the express and implied warranties by the failure of the Journey to provide reasonable restraint and occupant protection to RJA and the improper marketing with regard to failure to warn and failure to instruct regarding the nature of the product and how and by whom it could be safely used, subject to the known dangerous defects by Chrysler as set forth herein.

71. The Journey was defective and unreasonably dangerous at the time it left Chrysler's control and, as a consequence, Chrysler has breached the implied warranty of merchantability as set forth in § 2.314 of the Tex. Bus. & Com. Code in that the Journey was unfit for its ordinary and intended purpose.

72. Chrysler's breach of warranties and the defects set forth herein rendered the Journey unreasonably dangerous and was a proximate cause and a producing cause of Plaintiffs' injuries and damages.

73. Further, Chrysler's conduct was done knowingly.

## VII.
## DAMAGES

Plaintiffs incorporate by this reference each and all of the allegations contained in Paragraphs 1 through 73 of this complaint as though fully set forth here.

74. As a result of the actions and conduct of the Defendant set forth above, RJA was catastrophically injured in the collision and is now quadriplegic.

75. Because of the nature and severity of the injuries sustained, RJA has suffered physical pain and mental anguish and, in reasonable probability, will continue to suffer physical pain and mental anguish in the future and for the remainder of her life.

76. RJA has suffered and will continue to suffer disfigurement, physical impairment, limitation of activities and loss of life's enjoyment.

77. Because of the nature and severity of the injuries sustained, RJA will require other and additional medical treatment, life care, equipment, services and supplies from the age of 18 until the end of her life.

78. Charges for necessary medical treatment and services that will in reasonable probability be necessary from the age of 18 until the end of RJA's life will be reasonable charges made necessary by the catastrophic head and neck injuries RJA suffered.

79. As a direct and proximate result of the catastrophic head and neck injuries RJA has suffered, minor Plaintiff has diminished earning capacity in the future. To compensate for this loss, minor Plaintiff seeks recovery of loss of her future earning capacity.

## VIII.
## PRE-JUDGMENT INTEREST

Plaintiffs incorporate by this reference each and all of the allegations contained in Paragraphs 1 through 79 of this complaint as though fully set forth here.

80. Plaintiffs would additionally say and show that they are entitled to recover pre-judgment interest and attorney's fees in accordance with law and equity as part of their damages herein, and Plaintiffs here and now sue for recovery of pre-judgment interest and attorney's fees as provided by law and equity under the applicable provisions of the laws of the State of Texas.

## IX.
## JURY DEMAND

81. Plaintiffs respectfully request a jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendant be cited to appear and answer herein, and that upon final trial, Plaintiffs recover actual and compensatory damages, as specified above, from the Defendant; that Plaintiffs recover costs of Court herein expended; that Plaintiffs recover the interest, both pre-judgment and post-judgment, to which Plaintiffs are entitled under the law; and for such other and further relief, both general and special, legal and equitable, to which Plaintiffs may be justly entitled.

Respectfully submitted,

By:   /s/ Robert E. Ammons
Robert E. Ammons (Attorney-in-Charge)
Texas State Bar No. 01159820
Southern District of Texas Bar No. 11742
THE AMMONS LAW FIRM, L.L.P.
3700 Montrose Boulevard
Houston, Texas 77006
Telephone: 713-523-1606
Facsimile: 713-523-4159
Email: rob@ammonslaw.com
Email: joy@ammonslaw.com

*ATTORNEYS FOR PLAINTIFFS*

OF COUNSEL:
April A. Strahan
Texas State Bar No. 24056387
Southern District of Texas Bar No. 866845
THE AMMONS LAW FIRM, L.L.P.
3700 Montrose Boulevard
Houston, Texas 77006
Telephone: 713-523-1606
Facsimile: 713-523-4159
Email: april@ammonslaw.com