IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMY ARIAS and SAN JUAN ARIAS, as Next Friends of RJA, their minor child, | § § § | |
| | § | Civil Case No.: 4:18-cv-03526 |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| FCA US LLC, | § | |
| | § | JURY |
| Defendant. | § | |

**DEFENDANT FCA US LLC'S DEPOSITION PAGE AND LINE DESIGNATIONS OF TESTIMONY OF RANDALL JANSKY, JR.**

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE ALFRED H. BENNETT:**

COMES NOW FCA US LLC, Defendant, in the above-styled and numbered cause, and files its page and line designations of the testimony of Randall Jansky, Jr.

                                      Respectfully submitted,

                              By:      */s/ G. Robert Sonnier*
                                          G. Robert Sonnier, SD Bar #20069
                                          Texas Bar No. 18847400
                                          Ryan C. Bueche, SD Bar # 1419712
                                          Texas Bar No. 24064970
                                          Ian M. Lancaster, SD Bar # 3450424
                                          Texas Bar No. 24097964

                                        Germer Beaman & Brown PLLC
                                        301 Congress Avenue, Suite 1700
                                        Austin, Texas 78701
                                        Telephone: (512) 472-0288
                                        Fax: (512) 472-0721
                                        rsonnier@germer-austin.com
                                        rbueche@germer-austin.com
                                        ilancaster@germer-austin.com

Amy Bice Larson, *Pro Hac Vice*
Michigan Bar P66641 and Texas Bar No. 24101125
Bush Seyferth PLLC
100 W. Big Beaver, Suite 400
Troy, Michigan 48084
Telephone: (248) 822-7800
larson@bsplaw.com

and

Kurt C. Kern
State Bar No. 11334600
Southern District of Texas Bar #21233
Amanda Crawford-Steger
Texas Bar No. 24105756
Southern District of Texas Bar #3146930
BOWMAN AND BROOKE, LLP
5830 Granite Parkway, Suite 1000
Plano, TX 75024
Telephone: (972) 616-1700
Facsimile: (972) 616-1701
kurt.kern@bowmanandbrooke.com
amanda.crawford-steger@bowmanandbrooke.com

**COUNSEL FOR DEFENDANT
FCA US LLC**

| RANDALL JANSKY, JR. Deposition Taken on November 29, 2016 in *Arias v. Evenflo* | | | |
|---|---|---|---|
| **Page and Line Designation** | **Testimony** | **Objection** | **Ruling** |
| 4:11: 4:13 | 11 Q. Mr. Jansky, would you please state your full name for<br>12 the record.<br>13 A. Randall James Jansky, Jr. | | |
| 5:6 – 5:15 | 6 Q. It's my understanding, sir, that this lawsuit arises<br>7 from a two-vehicle accident that occurred in Schulenburg, Texas<br>8 back in April of 2013 --<br>9 A. Correct.<br>10 Q. -- is that correct?<br>11 A. Yes.<br>12 Q. And it's my understanding, sir, that you were<br>13 actually driving one of the two vehicles that was involved in<br>14 that accident?<br>15 A. Yes, sir. | | |
| 8:4 – 8:9 | 4 Q. Mr. Jansky, let me ask you just a little bit about<br>5 yourself. What's your date of birth, sir?<br>6 A. 12/8/1980. December 8th.<br>7 Q. So if my math's right, it sounds like you are 36<br>8 years old?<br>9 A. Fixing to be 36. | | |
| 8:12, starting at "And" – 8:15 | 12 …And what's your current<br>13 place of residence?<br>14 A. It's 1153 Red Town Road, Elgin, Texas, 78621. Now,<br>15 that's where I'm living. Do you want my mailing address or... | | |
| 8:21 – 8:24 | 21 Q. Okay. Have you ever been married, sir?<br>22 A. Yes, I was.<br>23 Q. Okay. How many times?<br>24 A. Once. | | |
| 9:2 – 9:14 | 2 Q. How are you currently employed, Mr. Jansky? | | |

| | | | |
|---|---|---|---|
| | 3 A. Through Elgin Fertilizer.<br>4 Q. All right.<br>5 A. A truck driver.<br>6 Q. And you -- so you drive trucks for Elgin Fertilizer?<br>7 A. Yes.<br>8 Q. Okay. How long have you worked for Elgin Fertilizer?<br>9 A. Ooh. I think that I'm going on my fifth year now.<br>10 Q. Have you always been a truck driver?<br>11 A. An electrician. A journeyman electrician also.<br>12 Q. Okay. And let me clarify my question a little bit<br>13 there. Have you always driven trucks for Elgin Fertilizer?<br>14 A. Since I worked for them, yes | | |
| 9:18 – 10:20 | 18 Q. Where did you attend high school, sir?<br>19 A. Round Rock High School.<br>20 Q. And what year did you graduate from Round Rock?<br>21 A. 1999.<br>22 Q. After you finished Round Rock High, did you ever<br>23 attend any kind of either college, community college, trade<br>24 school, anything like that?<br>25 A. I went through electrical trade school for the union.<br>1 Q. Okay. What trade school was that?<br>2 A. The IBW, whatever trade center -- trade school they<br>3 send you. I --<br>4 Q. Did you obtain any kind of a license or certificate<br>5 from the trade school?<br>6 A. I got a degree and then a electrical -- my<br>7 journeyman's electrical license.<br>8 Q. And did you ever actually work as an electrician?<br>9 A. Yes, for ten years.<br>10 Q. When did you first start driving trucks, Mr. Jansky?<br>11 A. March of 2009, I believe was the first time. I've<br>12 driven off and on for my grandpa and stuff, when he needed<br>13 help. | | |

| | | | |
|---|---|---|---|
| | 14 Q. Mr. Jansky, do you hold a commercial driver's
15 license?
16 A. Yes, sir.
17 Q. By what state is that issued?
18 A. Texas.
19 Q. When did you first get your Texas CDL?
20 A. 2001, whenever -- right when I turned 21. | | |
| 11:22 – 12:15 | 22 what would you typically be hauling?
23 A. Liquid fertilizer. Yes.
24 Q. And what were the types of routes you normally would
25 drive?
1 A. Interstate and highway.
2 Q. Okay. Now, is Elgin Fertilizer's operations based
3 here in Elgin?
4 A. Yes.
5 Q. And then, what would have been some of the
6 destinations where you would either be going from here to
7 either go pick up or drop off liquid fertilizer?
8 A. Victoria, Corpus Christi, Houston, Beaumont, Waco.
9 Q. Was it all in Texas?
10 A. Yes. We don't leave Texas.
11 Q. And it's my understanding, sir, that at the time of
12 this accident, you were driving a 2009 Peterbilt --
13 A. Yes.
14 Q. -- tractor; is that correct?
15 A. Yes, sir. | | |
| 12:23 – 13:5 | 23 Q. And then, it's my understanding that at the time of
24 this accident, you were pulling a tanker trailer; is that
25 correct?
1 A. Yes, sir.
2 Q. And was that your normal type of assembly that you
3 would be driving on the trips we talked about earlier, where
4 you'd have a tractor pulling a tanker trailer? | | |

| | | | |
|---|---|---|---|
| | 5 A. Yes, sir. | | |
| 13:19 – 14:3 | 19 Q. Now, am I correct, sir, that this accident we're here<br>20 about in this case occurred at the intersect- -- intersection<br>21 of Interstate 10 and Highway 77?<br>22 A. Yes, sir.<br>23 Q. In Schulenburg, Texas; correct?<br>24 A. Yes, sir.<br>25 Q. And was that a -- was that intersection a route or an<br>1 area that was familiar to you, based on some of your prior<br>2 runs?<br>3 A. Yes, sir. | | |
| 14:10 – 15:8 | 10 Q. Okay. So it sounds like that at the time of this<br>11 accident, you'd been driving for about a year or so, but by<br>12 that point, you'd become very familiar with that intersection?<br>13 A. Yes, sir.<br>14 Q. The police report in this case, Mr. Jansky, indicates<br>15 that this accident occurred at about 1:40 in the afternoon.<br>16 A. Yes.<br>17 Q. Does that sound correct?<br>18 A. Yes, sir.<br>19 Q. As best you can recall, sir, what had been your<br>20 driving activities that day, prior to the accident?<br>21 A. Just -- I guess I left about -- I don't know --<br>22 somewhere seven or eight and left out and went down there.<br>23 Q. Okay. And -- and that day, where were you headed in<br>24 particular, Victoria?<br>25 A. Victoria and back to Elgin. Yes, sir.<br>1 Q. How long does it normally take you? I realize<br>2 there's some variation there, but how long would -- on average,<br>3 would it take you to get from Elgin to Victoria?<br>4 A. About two-and-a-half, three hours. It just depends<br>5 on traffic.<br>6 Q. And was that a situation like normal, where you left | | |

| | | | |
|---|---|---|---|
| | 7 out empty, and when you got to Victoria, you loaded up?<br>8 A. Yes, sir. | | |
| 15:18 – 17:5 | 18 Q. Now, do you recall experiencing any kind of<br>19 mechanical problems or anything like that with either your<br>20 tractor or your trailer that day?<br>21 A. No, sir.<br>22 Q. Everything seemed to be in good working order?<br>23 A. Yes, sir.<br>24 Q. And then, tell me what you recall as you began to<br>25 approach that intersection of I-10 and 77, as you were<br>1 returning to Elgin. You -- you'd have been coming northbound<br>2 on 77; is that right?<br>3 A. Yes, sir.<br>4 Q. Okay. Now, at that time, what was your understanding<br>5 of -- of the traffic signals or -- or how that intersection was<br>6 governed at that time?<br>7 A. There was no signal lights at the time of the<br>8 accident, and we had -- we had the right-of-way. 77 had the<br>9 right-of-way, and they had the stop signs coming off, entering<br>10 and exiting I-10. And I just -- she popped out of nowhere.<br>11 Q. Okay. So let me clari- -- let me see if I can make<br>12 sure I understand that last part correctly. When you were --<br>13 both when you were go- -- going to Victoria, going southbound<br>14 on 77, but also when you're coming back going northbound on 77,<br>15 are you saying that at that time, you did not have any kind of<br>16 a light or a stop sign or anything that would restrict you at<br>17 that intersection?<br>18 A. No, sir.<br>19 Q. That north and southbound traffic on 77 had the<br>20 right-of-way?<br>21 A. Mm-hmm. Yes, sir.<br>22 Q. And then, as you were approaching it northbound, | | |

| | | | |
|---|---|---|---|
| | 23 coming back, there would be a point there where, I guess, the<br>24 frontage or the service road for I-10 would intersect; is that<br>25 right?<br>1 A. Yes, sir.<br>2 Q. And is it your understanding that, that traffic on<br>3 that eastbound off ramp or service road that -- was it<br>4 restricted by anything at that intersection?<br>5 A. Stop sign. | | |
| 18:18 – 19:12 | 18 Q. (BY MR. SELF): Okay. At any point prior to the<br>19 accident, do you recall seeing this other vehicle that was<br>20 ultimately involved in the accident with you?<br>21 A. No, sir.<br>22 Q. According to the accident report Mr. Jansky, the --<br>23 the other vehicle was a 2012 white Dodge Journey, which I guess<br>24 people might describe as a -- kind of a crossover type of<br>25 vehicle. It almost looks like a –<br>1 A. It was a little bit like an SUV, is --<br>2 Q. Okay. Do you recall ever seeing that vehicle as it<br>3 was coming down the off ramp or approaching the stop sign or<br>4 anything like that?<br>5 A. I seen it coming down at the deal, but it was when I<br>6 was going is when she popped back into view. And I -- at that<br>7 point, it was too late.<br>8 Q. Okay. Would it be fair to say that -- if you saw her<br>9 coming down the off ramp, is it fair to say you expected her to<br>10 stop at the stop sign like you'd seen other vehicles do there<br>11 before?<br>12 A. Yes. I would expect them to stop. | | |
| 20:7 – 20:9 | Q. What -- what did you do whenever you realized that<br>8 this car had pulled out in front of you?<br>9 A. Stood on the brakes. | | |
| 20:11 – 20:25 | 11 A. As far as was sta- -- I -- if I remember, I was<br>12 standing in the seat, and I grabbed the -- there was trailer | | |

| | | | |
|---|---|---|---|
| | 13 brakes, and I had those too. I was trying.<br>14 Q. And did -- did you steer in any direction?<br>15 A. I can't remember. I know the truck went right. So I<br>16 don't know if it was her forcing me that went right or what,<br>17 but we went up underneath that bridge.<br>18 Q. And describe for me what happened to the vehicles,<br>19 the movement of the vehicles once there was an impact?<br>20 A. Soon as I hit her, we just went to the right, and<br>21 I -- we were -- there was that -- the wall -- the columns right<br>22 there, and we went right up to the right of them. And when we<br>23 stopped, she was still in front of the truck. And then we were<br>24 all on the incline of the bridge that go- -- the wall that goes<br>25 underneath the bridge. | | |
| 21:7 – 21:15 | 7 Q. Okay. And if I understand you correctly, the<br>8 vehicles came to rest in a more northerly or northeasterly<br>9 direction, and y'all came to rest at a place where you were<br>10 kind of between the column or the pillar for the overpass and<br>11 then the embankment for the overpass?<br>12 A. Yes, sir.<br>13 Q. And it actually pushed it up onto the -- the -- that<br>14 kind of slope?<br>15 A. Yes, sir. | | |
| 23:23 – 24:6 | 23 Q. Okay. Now, let me ask you about that. Is it your<br>24 understanding, Mr. Jansky, that -- that a -- a blood and<br>25 alcohol test is something that is required by DOT regulations<br>1 if a commercial driver like yourself is involved in a serious<br>2 accident?<br>3 A. Yes.<br>4 Q. Did that -- did that test come back positive for<br>5 anything?<br>6 A. No, sir. | | |
| 24:22 – 25:2 | 22 Q. Now, before you left the scene to go get your -- your<br>23 DOT post-accident testing done, did you have an opportunity to | | |

| | | | |
|---|---|---|---|
| | 24 describe what had happened to any of the investigating
25 officers?
1 A. I had to do the b- -- say exactly what I told you
2 about the accident. | | |
| 26:1 – 27:6 | 1 Q. I'm going to read from [sic] you from the
2 investigators narrative opin- -- narrative opinion of what
3 happened. This is part of officer Hengst's police report that
4 he prepared in this case. And what he says is:
5 "Unit 1 driver failed to yield right-of-way or
6 disregarded stop sign at intersection of I-10 Eastbound exit
7 ramp and Highway 77."
8 I'm going to pause right there. Based on what
9 you observed, Mr. Jansky, do you agree with that
10 characterization of what happened?
11 A. Yes.
12 Q. "Unit 1" being the Dodge Journey?
13 A. That she failed to -- yeah. Yes, sir. Yes, sir.
14 Q. All right. The next sentence, the -- Unit 2 -- by
15 the way, I should have clarified this: Unit 1, in his police
16 report, is the Dodge Journey, and Unit 2 would be your tractor.
17 Okay?
18 A. Okay.
19 Q. So the next sentence says: Unit 2 attempted to stop
20 but was unsuccessful and collided with Unit 1.
21 Do you agree with that?
22 A. Yes, sir.
23 Q. The next sentence says: Unit 2's front bumper and
24 grill collided into Unit 1's passenger side of vehicle.
25 Do you agree with that?
1 A. Yes, sir.
2 Q. Next sentence says: Both vehicles skidded
3 approximately 162 feet and came to rest underneath the I-10
4 underpass. | | |

| | | | |
|---|---|---|---|
| | 5 Do you agree with that?<br>6 A. Yes, sir. | | |
| 30:11 – 30:20 | 11 Q. Mr. Jansky, based on what you personally saw that<br>12 day, is it your opinion that this -- that, that accident was<br>13 caused by the driver of that Dodge Journey failing to yield the<br>14 right-of-way at that intersection?<br>15 A. Yes, sir.<br>16 Q. If the lady driving that Journey, Ms. Arias, if she<br>17 had remained at the stop sign and yielded the right-of-way to<br>18 traffic that was coming through the intersection, namely you,<br>19 do you believe this accident would have occurred?<br>20 A. No, it wouldn't have occurred. | | |
| 32:11 – 32:15 | 11 Q. Do you have any estimation or -- or idea of about how<br>12 much, in terms of weight, there was of that liquid fertilizer<br>13 in your load?<br>14 A. We average -- we have overload permits, and it was<br>15 84,000 -- a little shy of 84,000. | | |

## CERTIFICATE OF SERVICE

      I hereby certify that on December 30, 2019, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                  */s/ G. Robert Sonnier*
                                  G. Robert Sonnier